**SO ORDERED.**

**DONE and SIGNED August 8, 2019.**



_____
**JOHN S. HODGE
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 15-12181 |
| | § | |
| Sheredia L. Simon | § | Chapter 13 |
| | § | |
| Debtor | § | |

## <u>Memorandum of Decision</u>

Debtor asserts multiple objections to a claim filed by a creditor in a motor vehicle credit transaction. In challenging the claim, Debtor seeks to strip its pre-petition interest, late fees and extension fees. First, Debtor argues the claim amount violates the confirmed chapter 13 plan even though the plan states that "unless otherwise ordered by the court, the claim amount listed on the proof of claim controls over any contrary amount" listed in the plan. Second, Debtor argues the claim should be reduced because it fails to itemize prepetition interest and charges even though it plainly identifies the principal amount, total interest, total extension fees, total late fees, and total payoff due on the date of the commencement of the bankruptcy case.

Third, Debtor argues the claim is unenforceable under Louisiana law, the relevant statutory law, because Louisiana forbids a creditor in a motor vehicle financing transaction from charging interest in addition to delinquency fees and extension fees, despite express statutory provisions which permit such charges. Lastly, Debtor argues this court should enter a default judgment against the claimant without conducting any judicial review of the claim to determine if it is valid or invalid. The court rejects all of Debtor's arguments.

## I. Jurisdiction, Venue, Core Status and Authority to Enter Final Order

The court has jurisdiction over the objection pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper pursuant to 28 U.S.C. § 1408. All claims presented to this court are "core" pursuant to 28 U.S.C. § 157 (b)(2)(A) and (B).

The court has an independent duty to evaluate whether it may exercise its final adjudicative power in a manner consistent with the United States Constitution. The Supreme Court's ruling in *Stern v. Marshall,* 564 U.S. 462 (2011), sets forth certain limitations on the authority of bankruptcy courts to enter final orders. *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C.,* 735 F.3d 279, 286 (5th Cir. 2013) (" 'the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.' ") (quoting *Stern,* 564 U.S. at 499). Thus, under *Stern*, in addition to determining whether each claim is core or non-core, this court must also determine whether the underlying issue "stems from the bankruptcy itself or it would necessarily be resolved in the claims allowance process." *BP RE,* 735

F.3d at 286. If the court determines that it may not exercise its final adjudicative power in a manner consistent with the United States Constitution, it must issue proposed findings of fact and conclusions of law to be considered by the district court.

In this case, the matter before the court involves the claim resolution process and arises from an express provision of the Bankruptcy Code, 11 U.S.C. § 502(a), and express Bankruptcy Rules, Fed. R. Bankr. P. 3001 and 3007. Accordingly, the court finds that it may exercise its final adjudicative power in a manner consistent with the United States Constitution to enter a final order on the claim objection. *In re Rodriguez*, 567 B.R. 275, 278 (Bankr. S.D. Tex. 2017) ("As the allowance of a claim is a quintessential issue in bankruptcy law, this Court possesses the necessary constitutional authority to enter a final order in this matter.").

## II. <u>Findings of Fact</u>

The court makes the following findings of fact pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.

The facts, in pertinent part, are as follows:

1. On November 25, 2015, Sheredia L. Simon ("**Debtor**") commenced this case by filing a voluntary petition pursuant to chapter 13 of the Bankruptcy Code.

2. Approximately 22 months prior to the commencement of this case, Debtor entered into a motor vehicle retail installment contract with Landers Fiat, a car dealership in Shreveport, Louisiana, to obtain financing for her motor vehicle purchase. Claim 1-1, p. 5.

3. The car dealership subsequently assigned its rights and obligations under the contract to Santander Consumer USA, Inc. d/b/a Chrysler Capital ("**Claimant**"). Claim 1-1, p. 8.

4. Debtor financed the principal amount of $20,369.00 and she agreed to pay interest at a rate of 24% per year, over a six-year (72 month) term in monthly installments of $541.61. Claim 1-1, p. 5.

5. Claimant received a purchase money security interest in the motor vehicle. Claim 1-1, p. 7.

6. The motor vehicle was acquired for Debtor's personal use within 910 days of the bankruptcy filing. Doc. 22, Plan, § 3.3.

7. Claimant timely filed Claim 1-1 (the "**Claim**") before the confirmation of the plan. The Claim was later assigned to Wollemi Acquisition, LLC. Doc. 34.

8. On February 22, 2016, this court (Norman, J.) confirmed Debtor's plan which requires her to pay $496.00 per month to the trustee for 60 months in satisfaction of all allowed claims and administrative expenses. The plan provides that the motor vehicle claimant will receive a monthly payment of $143.75 and its claim will be paid at the interest rate of 5.25%. Doc. 22, Plan, § 3.3.

9. By filing bankruptcy, Debtor received immediate debt relief. Using the statutory remedies available to her, Debtor was able to reduce her car payment from $541.61 per month to $143.75 per month and to reduce the interest rate from 24% to 5.25%. The claim objection seeks additional debt relief by attempting to reduce the claim to the principal amount owed on the petition date.

10. The order confirming the plan (Doc. 28) is final and non-appealable.

## III. Conclusions of Law and Analysis

The court makes the following conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

### A. The Confirmed Plan Does Not Bar the Claim.

Relying on § 1327 of the Bankruptcy Code, Debtor argues the amount of the Claim is limited by the plan because the plan lists the principal amount for this Claim, exclusive of interest, delinquency fees and extension fees. Section 1327 sets forth the effect of chapter 13 plan confirmation, including the binding nature of the plan: "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Therefore, once final, the plan essentially has a *res judicata* effect, and it "represents a binding determination of the rights and liabilities of the parties as ordained by the plan." See, 8 COLLIER ON BANKRUPTCY ¶ 1327.01 (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2014) (citations omitted). See also, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) (emphasizing the final and binding nature of confirmation orders, even when a plan contravenes the Bankruptcy Code).

Although the confirmed plan undoubtedly has a *res judicata* effect, it does not preclude or limit the amount of the Claim because the plan expressly provides that

"unless otherwise ordered by the court, the claim amount listed on the proof of claim controls over any contrary amount for claim listed" in the plan. (Doc. No. 22, § 3.3). This provision is consistent with provisions in the current version, and all prior versions, of the national chapter 13 plan proposed by the Judicial Conference's Standing Advisory Committee on Rules of Practice and Procedure. Throughout its various drafts since it was first proposed in 2013, the national chapter 13 plan has consistently identified when the plan controls over a contrary proof of claim and when the claim amount is to be used. Here, the confirmed plan, like the national plan, makes clear that the amount listed in the timely filed proof of claim for a so-called "910 claim" will trump the amount listed in the plan, unless the court orders otherwise.[1] Because the confirmation order is final, Debtor is bound by the terms of her plan.

**B.  Debtor Failed to Rebut the Presumption of the Claim's Prima Facie Validity**

To comply with the Bankruptcy Rules, a proof of claim must "conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). A proof of claim filed in accordance with Bankruptcy Rule 3001 is "prima facie evidence of

---

[1] Section 3.3 of the current national plan, Official Form 113, contains a provision nearly identical to the one used in the plan confirmed in this case. Official Form 113, § 3.3, governs so-called "910 claims," like the claim at issue in this case, which are subject to the "hanging paragraph" of § 1325(a). Pursuant to § 3.3, the amount of such claim is fixed by a timely filed proof of claim in the absence of a court order to the contrary. The "hanging paragraph" of § 1325(a) provides an exception for the rule in § 506(a) that the amount of a secured claim is the value of the collateral. Under the "hanging paragraph," the debtor cannot reduce the amount of the secured claim to the value of the collateral for (i) purchase money security interests in automobiles acquired for personal use within 910 days of the bankruptcy filing or (ii) a purchase-money security interest in any other thing of value acquired within one year of the filing. It is referred to as the "hanging paragraph" because it appears at the end of § 1325(a) as an unnumbered subsection.

the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). This prima facie validity may be rebutted by the objecting party producing evidence "of a probative force equal to that of the creditor's proof of claim." *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). Once an objecting party produces evidence rebutting a proof of claim, the burden then lies with whichever party it would normally, according to the relevant substantive law. *In re Bryant*, 600 B.R. 533, 536 (Bankr. N.D. Tex. 2019).

In this case, Debtor argues the claim is not prima facie evidence of its validity and amount because, she says, it fails to comply with the itemization requirement imposed by Fed. R. Bankr. P. 3001(c)(2)(A) which requires claims filed in cases where the debtor is an individual to disclose certain information in the proof of claim. Specifically, the rule provides as follows:

> (c) **Supporting information**
> 
> \*\*\*
> 
> (2) **Additional requirements in an individual debtor case: sanctions for failure to comply**
> 
> In a case in which the debtor is an individual:
> 
> (A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

Fed. R. Bankr. P. 3001(c)(2)(A).

"When the holder of a claim seeks to recover - in addition to the principal amount of a debt - interest, fees, expenses, or other charges, the proof of claim must be accompanied by a statement *itemizing these additional amounts with sufficient*

*specificity to make clear the basis for the claimed amount.*" Fed. R. Bankr. P. 3001 advisory committee's notes (2011) (emphasis added). The question presented in this case is whether Claimant itemized with sufficient specificity for Debtor to understand the basis for the amount owed.

Debtor argues that Claimant was required to provide a level of itemization similar to that found in Official Form 410A, *viz.*, a loan history that reveals when payments were received, how they were applied, when fees and charges were incurred, and when escrow charges were satisfied. Official Form 410A, however, is applicable solely to home mortgage claimants. A motor vehicle claimant is not required by Fed. R. Bankr. P. 3001(c)(2)(A) or Official Form 410 to provide a loan history. Instead, § 7 of Official Form 410 merely requires claimants to check a box if their claim "includes interest or other charges." If it does, claimants are then instructed to attach a "statement itemizing interest, fees, expenses or other charges required by Bankruptcy Rule 3001(c)(2)(A)." In this case, in support of its proof of claim, Claimant provided all of the information sought by the itemization requirement, including an attachment called "payoff itemization" which listed the principal outstanding ($19,883.80), the unpaid interest accrued ($2,099.52), the unpaid extension fees ($50.00), the unpaid late fees ($486.32), and the total payoff ($22,519.64) as of the date of the commencement of the case. From this information, Debtor was able to determine what portion of the claim to object to and how to frame her objection. The proof of claim provided an itemized statement with sufficient specificity for Debtor to understand the basis for the amount owed.

Several courts have considered the level of itemization required by Fed. R. Bankr. P. 3001(c)(2)(A). In *In re Kennedy*, 568 B.R. 367, 372-73 (Bankr. D. Kan. 2017), the court held that a proof of claim filed in an individual debtor case which separately identified the total claim, principal, interest, charges, and collection costs, and gave the subtotal for each category, satisfied the itemization requirement imposed by Fed. R. Bankr. P. 3001(c)(2)(A), thereby entitling claimant to the presumption of prima facie evidence of the validity and amount of its claim. The court concluded the claimant gave sufficient information to enable the debtor to understand the basis for the claimed amount, such that the debtor was able to determine what portion of the Claim to object to and how to frame her objection. Likewise, in *In re Fanning*, No. 18-11163, 2019 WL 2179734 (Bankr. W.D. Okla. May 22, 2019), the court held that a proof of claim which identified the total amount claimed and provided a breakdown of charges into principal, interest, pre-petition fees, charges, and attorneys' fees satisfied the itemization requirement imposed by Fed. R. Bankr. P. 3001(c)(2)(A).

In this case, the court holds the Claim is entitled to the presumption of prima facie validity because it satisfies Fed. R. Bankr. P. 3001 as it: (1) conforms substantially to Official Form 410; (2) was executed by an authorized agent of the creditor; (3) includes a payoff itemization which separately identified the principal amount, total interest, total extension fees, total late fees, and total payoff due on the date of the commencement of the bankruptcy case; (4) includes a copy of the retail installment contract; (5) attaches sufficient evidence to establish the perfection of

Claimant's security interest in the collateral; and (6) attaches a secretary's certificate signed by Claimant's chief legal officer and secretary attesting Claimant's right to use the tradename(s) identified in the contract signed by Debtor. Debtor failed to produce any evidence having a probative force equal to that of the Claim sufficient to defeat the presumption of validity of the Claim.

> **C. Even if the Claim is not Entitled to a Presumption of Prima Facie Validity, Debtor Failed to Introduce Any Evidence to Disallow Claim.**

As the Eighth Circuit noted, "a claimant's failure to comply with Rule 3001(c)(2)(A) or Official Form 10, however, is not by itself a reason to disallow a claim." *In re Sears*, 863 F.3d 973, 979 (8th Cir. 2017). "A failure to itemize interest in accordance with the rules means only that the proof of claim is not prima facie evidence of the claim's validity and amount." *Id.* *See also,* Fed. R. Bankr. P. 3001, Advisory Committee Notes (2011) ("Failure to provide the required information does not itself constitute a ground for disallowance of a claim.").

As noted above, this court will treat the Claim as prima facie evidence of validity, but even assuming for the sake of argument that it is not entitled to that status, the claim objection should nevertheless be overruled because the Claim constitutes at least some evidence of a right to payment from the estate and the objecting party failed to offer any evidence to rebut it. *Sears*, 863 F.3d at 980. When a claim lacks prima facie validity under Rule 3001(f), an objecting party must "assert a substantive basis for disallowance expressly stated in § 502 and come forward with some evidence to disallow the claim for that reason." *In re Brunson*, 486 B.R. 759, 769

(Bankr. N.D. Tex. 2013). For example, in this case, Debtor could have submitted a signed affidavit averring that the claim was not owed, or that she made all payments timely, or that the debt has been satisfied. Here, however, Debtor failed to introduce any evidence which would support her assertion that the amounts listed in the Claim are incorrect. For that reason alone, the claim objection should be overruled.

   D.   **Section 502(b) does not preclude the Claim.**

Debtor failed to assert any persuasive argument that the Claim should be disallowed under § 502(b). Under the Bankruptcy Code, a claim may be disallowed if it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law…" 11 U.S.C. 502(b)(1). It is a "settled principle" that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation." *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 450 (2007) (quoting *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15, 20 (2000)). Consistent with that principle, the Supreme Court has repeatedly recognized that, for purposes of the Bankruptcy Code's definition of "claim," a right to payment exists where such a right is "recognized under state law." *Id.* at 451; see *Butner v. United States,* 440 U.S. 48, 54-55 (1979).

Here, Debtor complains that Claimant charged "interest on top of late charges." See, Objection, ¶ 13. By complaining about the simultaneous accrual of interest and late fees, Debtor suggests that Louisiana law, the relevant statutory law, forbids a creditor from charging interest on a motor vehicle credit transaction if it

also charges a late fee. Contrary to Debtor's assertions, however, Louisiana has no such law. In Louisiana, motor vehicle credit transactions are governed by Louisiana Motor Vehicle Sales Financing Act (LMVSFA), La. R.S. 6:951 *et seq.*, which expressly permits a consumer buyer and retail seller to execute a retail installment contract requiring the consumer to pay interest, La. R.S. 6:969.10(B), delinquency charges, La. R.S. 6:969.15(A), and interest on delinquency charges, La. R.S. 6:969.15(B)(4).

Next, Debtor asserts there is insufficient documentation to establish that Claimant is entitled to charge simple interest on the amounts owed under the contract or to impose late fees in the event of a delinquent payment. See, Objection, ¶ 13. The retail installment contract, however, expressly provides for the payment of simple interest and late fees. With respect to the method of interest calculation, the contract's title makes clear that it uses the simple interest method as it is entitled "Retail Installment Contract *Simple Finance Charge*." (emphasis added). Likewise, the contract makes clear that Debtor agreed to pay late fees under certain circumstances.

> Selected provisions from the retail installment contract are set forth below:
>
> You, the Buyer (and Co-Buyer, if any) may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. *You agree to pay the Creditor-Seller (sometimes "we" or "us" in this contract), the Amount Financed, plus Prepaid Finance Charges, if any (your Principal Balance) and Finance Charge in U.S. funds according to the payment schedule below. We figured your finance charge on a daily basis* at a Base Rate of 24% per year. The Truth-in-Lending Disclosures are part of this contract.
>
> \*\*\*
>
> **Your Payment Schedule Will Be**:

Number of Payments: 72
Amount of Payments: $541.61
When Payments Are Due: Monthly beginning 03/03/2014

**Late Charge**: *If payment is not received in full within 10 days after it is due, you will pay a late charge of $10.00 or 5% of the part of the payment that is late, whichever is greater.*

**\*\*\***

**Finance Charge and Payments:**
a. **How we will figure Finance Charge.** [W]e will figure … the Finance Charge *on a daily basis at the Base Rate on the unpaid part of your Principal Balance.*

**\*\*\***

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day that it is due. *Your Finance Charge, Total of Payments and Total Sale Price will be more if you pay late and less if you pay early.* Charges may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**\*\*\***

**IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
a. **You may owe late charges.** *You will pay a late charge on each late payment as shown on the front.* Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

(Claim 1-1, pp 5-6) (emphasis added).

Thus, the contract expressly provides that Debtor will pay less interest if she makes payments early and, correspondingly, more interest if payments are made late. The contract also provides that she will pay a late charge equivalent to the greater of $10.00 or five (5%) percent of any payment or part thereof that is more than ten days

late. Here, Debtor made some payments more than ten days after her scheduled due dates, thus accruing both additional interest and late fees.

Beyond doubt, the contract uses the simple interest method of computing interest. La. R.S. 6:969.6(31) defines "simple interest transaction" to mean "a motor vehicle credit transaction under which loan finance charges or credit service charges are assessed by application of a contractual simple interest rate or rates to the unpaid principal balance of the contract." Under the simple interest method, the creditor sets up the loan on a "declining balances" basis. Every time a periodic payment is made, a periodic interest rate is applied to the outstanding balance. The interest that is produced (plus late charges, if any) is subtracted from the payment; the remainder of the payment is applied to the outstanding balance, thereby reducing it. Each time a payment is made, the same-process is repeated, until the outstanding balance is reduced to zero. If at any time the amortization is interrupted (because of prepayment, acceleration, refinancing, etc.), the outstanding balance can be quickly determined by adding any interest (or other charges) accrued since the last payment on the outstanding balance.

The LMVSFA plainly authorizes the use of simple interest in calculating the finance charge in an installment sale contract for a motor vehicle (La. R.S. 6:969.10(B)). It also plainly authorizes a separate 5% late fee for payments not made on or before the due date (La. R.S. 6:969.15) and a separate "deferral" charge or extension fee, not to exceed $25.00 per deferral (La. R.S. 6:969.16(C)). Thus, the statutory framework authorizes an installment sale contract to provide for finance

charges, separate late fees, separate extension fees and interest on all of these charges. Any contrary reading would render nugatory the statutory provisions authorizing these charges and contravene established principles of statutory construction.

Debtor argues her motor vehicle credit transaction was a "precomputed transaction," either because the contract provides for it or LMVSFA requires it. Under LMVSFA, a "precomputed transaction" means a "motor vehicle credit transaction under which loan finance charges or credit service charges are computed in advance over the entire scheduled term of the transaction and capitalized into the face amount of the contract." La. R.S. 6:969.6(26). In a "precomputed transaction" the consumer agrees to pay a total fixed sum (or total of all payments), rather than a fixed amount of principal together with interest as it accrues. In the normal precomputed transaction, the amount the debtor contracts to pay is determined by adding to principal all interest that would accrue if the installments were paid as scheduled.

In maintaining that the contract provides for a "precomputed transaction," Debtor notes that it includes disclosures required by the federal Truth-in-Lending Act, including a computed finance charge. Pursuant to 15 U.S.C. § 1601 *et seq.*, lenders are required to disclose the amount of the finance charge, regardless of whether the loan is a simple interest loan or is a precomputed transaction. By including the amount of the finance charge in the total of payments, Claimant merely informed Debtor of the total cost of her simple interest loan assuming no prepayment,

and assuming that all loan payments are timely received. The Truth-in-Lending disclosures, however, did not convert the simple interest transaction into a precomputed transaction, as the contract clearly states that the finance charge is computed daily on the loan balance.

There is no merit to Debtor's argument that the contract used the "precomputed" method of calculating interest or that LMVSFA requires the precomputed method. What Debtor is really contending is that this court should hold that the LMVSFA requires pre-computation of payments on a declining balance as if all of the payments are to be made on time, but that if payments are not made on time or at all, no further interest may be charged. This novel definition would strip "simple interest" of its essential meaning - that the interest is calculated on the unpaid balance. The simple interest method benefits buyers who pay early because that buyer pays less interest. If the buyer pays late, she pays more interest. The simple interest method merely reflects the time value of money. Debtor's position, if sustained, would benefit consumers who pay late and it would do so at the expense of those who pay early. There is no authority in LMVSFA or elsewhere for Debtor's interpretation.

Because Claimant has a right to payment under applicable state law, it necessarily follows that its claim must be allowed in the full amount, including its contract-based prepetition interest, late fees and interest on late fees. In Louisiana, "contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties." *Cox Commc'ns v.*

*Tommy Bowman Roofing, L.L.C.*, 2004-1666, p. 3 (La. App. 4 Cir. 3/15/06), 929 So.2d 161, 164 (citing La. Civ. Code arts. 1983 and 2045).

If this court were to strip the Claim of its pre-petition interest, late fees and interest on late fees, not only would it undermine the validity of contracts, it would also upset a basic principle of federal bankruptcy law: "that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Travelers*, 549 U.S. at 450–51, 127 S.Ct. 1199 (internal quotation marks omitted). Allowing creditors to assert contract-based claims for pre-petition interest, late fees and interest on late fees, as permitted by state law, simply "effectuates the bargained-for terms of the loan contract." *SummitBridge Nat'l Investments III, LLC v. Faison*, 915 F.3d 288, 296 (4th Cir. 2019) (permitting creditor to collect fees in bankruptcy if allowed by state law).

### E.  Debtor Is Not Entitled to a Default Order Sustaining the Claim Objection.

During the hearing on the claim objection, Debtor's counsel suggested that this court should enter an order sustaining the objection because Claimant did not file a response or attend the hearing. Essentially, Debtor's counsel suggested that this court should not conduct any judicial review regarding the validity or invalidity of the Claim. The court disagrees.

The filing of an objection to a proof of claim initiates a contested matter under the Bankruptcy Rules. *In re Taylor,* 132 F.3d 256 (5th Cir. 1998). Accordingly, Fed. R. Bankr. P. 7055, which incorporates Fed. R. Civ. P. 55, applies in this context. Fed. R. Bankr.P. 9014(c). Under Fed. R. Bankr. P. 7055, the entry of a default judgment

is not automatic. *Ganther v. Ingle,* 75 F.3d 207, 212 (5th Cir. 1996). Therefore, this court is not obligated to enter a default order disallowing the claim merely because there has been no response filed by the creditor. As noted by the advisory committee on the Federal Rules of Bankruptcy Procedure, "the court will still need to determine if the claim is valid, even if the claimant does not file a response to a claim objection or request a hearing." Fed. R. Bankr. P. 3007 advisory committee's notes (2017).

In considering whether a default judgment should be entered under Federal Rule 55, courts have developed a three-part analysis, *viz*.: (1) whether the entry of default judgment is procedurally warranted; (2) whether there is a sufficient basis in the pleadings for the judgment; and (3) determination of the form of relief, if any, due to the moving party. *See, In re Lewis*, No. 18-31573, 2019 WL 2158832, at *4 (Bankr. W.D. La. May 16, 2019) (citing Fifth Circuit cases for each prong).

In this case, Debtor did not satisfy the three-prong test because she did not state a legally sufficient ground for claim disallowance. As a result, Debtor is not entitled to any of the requested relief. *In re Brunson*, 486 B.R. 759, 768 (Bankr. N.D. Tex. 2013) (court must satisfy itself that the objecting party has "stated a legally sufficient ground for claim disallowance").

## IV. <u>Conclusion</u>

For the reasons stated herein, the court **<u>OVERRULES</u>** the objection filed by Debtor. The Claim is allowed as filed. A separate order overruling the claim objection will be entered.

###